UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARMEN AGUIRRE, on behalf of plaintiff and the class members described herein, | ) ) ) | |
| Plaintiff, | ) ) | |
| V. | ) ) | No.  15 C 11111 |
| ABSOLUTE RESOLUTIONS CORP; and BLATT, HASENMILLER, LEIBSKER & MOORE LLC, | ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Carmen Aguirre sued Defendants Absolute Resolutions Corp. ("ARC") and Blatt, Hasenmiller, Leibsker & Moore, LLC ("Blatt"), for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*  (Plaintiff's First Amended Complaint [29] ("Compl."), ¶¶ 1–10.)  This suit arises from a letter sent by the Defendants to Aguirre seeking repayment of a delinquent credit card debt Aguirre originally owed to Capital One.  Aguirre alleged that the Defendants falsely misrepresented the nature of the debt and employed unfair and unconscionable means to collect by inserting a sentence into the collection letter that "threatened" to add interest and other fees to the sum owed.  (*Id.* at ¶¶ 56–59.)

Defendants moved to dismiss the complaint for lack of standing. (Defendants' Motion to Dismiss under Rule 12(b)(1) for Lack of Standing [81] ("Defs.' MTD"), 1.)  The Defendants argue that Aguirre did not suffer a real, concrete harm from the letter, and, even if she did, such harm would not be fairly traceable to the Defendants but rather to Aguirre's own mistaken beliefs about the debt.  (*Id.*)  In so moving, Defendants rely primarily on the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), to argue that the harm Aguirre claimed was not sufficiently "concrete" to create Article III standing.  (Defendants' Memorandum

in Support of their Motion to Dismiss under Rule 12(b)(1) for Lack of Standing [82] ("Defs.'

Opening Br."), 11) (citing *Spokeo*, 136 S. Ct. at 1548).

For the reasons explained here, Defendants' Motion to Dismiss is denied.

**DISCUSSION**

**1.     Standard of Review**

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) challenges

the court's subject-matter jurisdiction.  Cases brought for violations of the FDCPA clearly "aris[e]

under" the laws of the United States, 28 U.S.C. § 1331, and the only question here is whether

Aguirre herself has standing to bring this suit.  Standing ensures that courts hear only "actual

cases or controversies," and limits the overall pool of litigants to those "seek[ing] redress for a

legal wrong." *Spokeo*, 136 S. Ct. at 1547.

The plaintiff bears the burden of establishing that she has standing to sue.  *Diedrich v.

Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 (7th Cir. 2016).  Where a defendant brings a

facial challenge to a plaintiff's standing, the district court presumes the truth of "all material

allegations of the complaint" and draws all reasonable inferences in the plaintiff's favor.

*Remijas v. Neiman Marcus Group, LLC*, 795 F.3d 688, 691 (7th Cir. 2015).  In this context, the

court "does not look beyond the allegations in the complaint."  *Apex Digital, Inc. v. Sears,

Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).  Where, however, the defendant challenges

the factual basis for standing based on other information, no presumption of truthfulness

attaches to the plaintiff's complaint and the court "may properly look beyond the jurisdictional

allegations . . . and view whatever evidence has been submitted on the issue to determine

whether in fact subject matter jurisdiction exists." *Id.* at 445 (internal quotations omitted).

**2.     Rule (12)(b)(1) Motion to Dismiss**

Plaintiff alleges numerous violations of 15 U.S.C. § 1692e (false or misleading

representations) and 15 U.S.C. § 1692f (unfair practices) based on an April 28, 2015 letter

seeking repayment of a delinquent Capital One credit card debt.  (Letter from Blatt to Aguirre of

4/28/15, Ex. C to Compl. [29-1] ("Collection Letter").)  Defendant Blatt, a law firm, sent the letter, identifying Defendant ARC as the "creditor," Capital One as the "original creditor," and $515.13 as the amount due.  (*Id.*)  Plaintiff's grievances stem from one sentence in the collection letter, which reads: "Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater."  (*Id.*)  Plaintiff claims that Defendants were not authorized—and never intended—to add any such charges to her account, and that the statement therefore amounts to an improper threat in violation of the FDCPA.  (Compl. ¶¶ 55–59.)  Although Blatt sent the letter, Aguirre claims that ARC is also liable, claiming it "authorized, directed, and ratified every action taken by Blatt on its behalf . . . in connection with efforts to collect the alleged debt."  (*Id.* at ¶ 46.)

In order to establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Diedrich,* 839 F.3d at 588 (quoting *Spokeo*, 136 S. Ct. at 1547) (internal quotations omitted).  Defendants assert that Plaintiff's complaint fails on the first two elements: that Plaintiff "did not suffer a real, concrete harm," and that any harm she did suffer is not fairly traceable to any misconduct on their part.  (Defs.' Opening Br., 2.) Defendants' motion focuses on admissions in Plaintiff's deposition, which they claim defeat her assertion that she was actually intimidated by the alleged threats in the collection letter.  (*Id.* at 5–9.)  Defendants also note that Plaintiff is only seeking statutory damages under the FDCPA and has not identified any actual loss.  (*Id.* at 4.)  Plaintiff responds that the FDCPA does not require proof of "actual damages" in order to establish standing, and that her injuries arise from violations of a statute granting her legally protected rights.  (Plaintiff's Response to Defendants' Motion to Dismiss [84] ("Pl.'s Resp. Br."), 5–6.)

## A.    "Concrete Harm"

For the purposes of standing, a plaintiff has suffered an injury in fact when she can show "an invasion of a legally protected interest which is (a) concrete and particularized, and (b)

actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548. Concrete injuries, however, need not be tangible. *Id.* at 1549; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982). While potentially harder to identify, intangible injuries may also give rise to standing. *Spokeo*, 136 S. Ct. at 1549–50 (citing *FEC v. Akins*, 524 U.S. 11, 20–25 (1998) and *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989) for the conclusion that not receiving statutorily-required disclosures of information can give rise to standing). In effect, "though actual monetary harm is a sufficient condition to show concrete harm, it is *not* a necessary condition." *Lane v. Bayview Loan Servicing, LLC*, No. 15-C-10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit.")

In determining whether a given intangible injury gives rise to standing, the Supreme Court has pointed to historical practice and Congressional judgment as informative sources. *Spokeo*, 136 S. Ct. at 1549. If an alleged intangible harm bears a close resemblance to a harm traditionally regarded as conferring standing under common law, the harm is likely concrete. *Id.* Congress's judgment is also important, as it can create private causes of action via statute and "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Lujan*, 504 U.S. at 578. Nevertheless, not all statutory violations automatically confer standing. Plaintiffs alleging "bare procedural violations," divorced from any risk of real harm, do not have standing to sue. *Spokeo*, 136 S. Ct. at 1549.

This point is best illustrated by the facts of *Spokeo*. In that case, the plaintiff sued a "consumer reporting website" under the Fair Credit Reporting Act for publishing inaccurate personal information about him. *Id.* at 1546. The information, however, was arguably complimentary of plaintiff's personal and financial circumstances, and the Court found that the Ninth Circuit had failed to address whether the inaccuracies "present[ed] any material risk of

4

harm." *Id.* at 1550. The lesson of *Spokeo* is not that intangible violations are not actionable, but rather that courts must take care to identify whether the risks embodied in a plaintiff's claims reflect the harms sought to be addressed by a statutory cause of action. Other examples of such harmless violations include: disclosure of an incorrect zip code, *see id.*, failing to redact a consumer's credit card expiration date on a receipt issued to that consumer, *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016), or retaining a consumer's personal information without any evidence that the information was leaked, lost, or given away, *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 910 (7th Cir. 2017).

Looking to either historical or Congressional precedent, Plaintiff Aguirre has alleged a concrete injury here. Plaintiff claims that the letter contained threatening language which Defendants could not, and did not, act upon in the attempt to collect on a debt. (Compl. ¶¶ 56, 58.) This allegation is well within the heartland of common law fraud. *See* RESTATEMENT (FIRST) OF TORTS § 525 (AM. LAW. INST. 1938) (liability for fraudulent misrepresentations). Similarly, Congress's stated goal in enacting the FDCPA was to curb "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). These are not the sorts of "bare procedural violations" the Supreme Court says do not support standing under Article III. (Defs.' Opening Br. 10–12) (quoting *Spokeo*, 136 S. Ct. at 1550). Aguirre has alleged a concrete injury by claiming that the Defendants threatened and lied to her—the precise harms the FDCPA was meant to remedy. As Judge Feinerman recently stated in an FDCPA suit over a collection letter containing nearly identical language[1]: "The value of receiving truthful information about one's financial affairs—and the ill effects of receiving misleading information—may be hard to quantify, especially where, as here, the plaintiff did not

---

[1] The *Haddad* letter read: "As of the date of this letter, you owe $1,823.84 on the above-referenced account. This may include other charges that apply to this account. *In addition, charges may continue to accrue on some or all of the balance due until the account is satisfied.* Thus, the amount due on the day you pay may be greater than the amount above. Please contact us to obtain an exact payoff amount or for further information." *Haddad,* 2017 WL 1550187, at *2 (emphasis in original).

act upon the misinformation. But being lied to in violation of an anti-trickery statute like the FDCPA is a concrete harm nevertheless." *Haddad v. Midland Funding, LLC*, ___ F. Supp. 3d ___, No. 16-C-3942, 2017 WL 1550187, at *3 (N.D. Ill. May 1, 2017) (citing *Havens Realty*, 455 U.S. at 373–74).

Defendants nevertheless maintain that the invasion of a legally protected interest is insufficient, by itself, to establish standing and that "[t]he concrete-harm requirement is focused on something else: the *consequence* of the breach." (Defendants' Reply Brief in Support of their Motion to Dismiss under Rule 12(b)(1) for Lack of Standing [85], ("Defs.' Reply Br."), 5) (emphasis in original). This misstates the effect of *Spokeo*. As the Court there recognized, "[t]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549 (emphasis in original) (citing *Akins*, 524 U.S. at 20–25). *Spokeo* does not indiscriminately sweep aside all the legal rights created by Congress that confer standing where no injury would otherwise exist. *Id.* at 1553 (Thomas, J. concurring).[2] Furthermore, such a view would make little sense in the context of the FDCPA, given that Congress made statutory damages available—a clear indication that it did not view the lack of direct pecuniary harm as a disqualifier. *See Philips v. Asset Acceptance Corp.*, 736 F.3d 1076, 1083 (7th Cir. 2013) ("Proof of injury is not required when the only damages sought are statutory.")

In several FDCPA cases pre-dating *Spokeo*, the Seventh Circuit recognized standing to challenge unlawful debt collection demands even without proof of additional harm. *See Keele v.*

---

[2] Justice Thomas continues: "In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a de facto injury merely from having his personal, legal rights invaded. Thus, when one man placed his foot on another's property, the property owner needed to show nothing more to establish a traditional case or controversy. Many traditional remedies for private-rights causes of action—such as for trespass, infringement of intellectual property, and unjust enrichment—are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right." *Spokeo*, 136 S. Ct. at 1551 (internal citations omitted).

*Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (standing existed based "on the debt collector's misconduct, not whether the debt is valid or . . . whether the consumer has paid an invalid debt."); *Phillips*, 736 F.3d at 1082–83 (standing existed where debt collectors had filed allegedly unlawful suits against consumers, even though those consumers had not actually been served). *Spokeo* does not disturb these holdings, as the vast majority of this court's colleagues have concluded. *See, e.g., Pierre v. Midland Credit Mgmt., Inc.*, No. 16-C-2895, 2017 WL 1427070, at *4 (N.D. Ill. April 21, 2017) (addressing *Spokeo* and finding an injury in fact where plaintiff asserted an FDCPA claim against a collection agency that attempted to recover an unpaid, but time-barred, debt). Over the last year and half, more than a dozen cases within this Circuit have recognized the differences between the claims in *Spokeo*, *Meyers*, and *Gubala*, and those alleged in FDCPA claims like those brought by Aguirre. In every instance, the courts have concluded that plaintiffs claiming intangible injuries from allegedly predatory debt collection practices do in fact have Article III standing to sue for statutory damages under the FDCPA.[3]

---

[3]    *See Lane v. Bayview Loan Servicing, LLC*, No. 15-C-10446, 2016 WL 3671467, at *4–5 (N.D. Ill. July 11, 2016) (Chang, J.); *Quinn v. Specialized Loan Servicing*, No. 16-C-2021, 2016 WL 4264967, at *4–5 (N.D. Ill. Aug. 11, 2016) (Bucklo, J.); *Bernal v. NRA Group, LLC*, 318 F.R.D. 64, 74 (N.D. Ill. 2016) (Feinerman, J.); *Saenz v. Buckeye Check Cashing of Ill.*, No. 16-C-6052, 2016 WL 5080747, at *2 (N.D. Ill. Sept. 20, 2016) (Shah, J.); *Hayes v. Convergent Healthcare Recoveries, Inc.*, No. 14-C-1467, 2016 WL 5867818, at *4 (C.D. Ill. Oct. 7, 2016) (Shadid, C.J.); *Everett v. Fin. Recovery Servs., Inc.*, No. 16-C-1806-JMS-MPB, 2016 WL 6948052, at *4 (S.D. Ind. Nov. 28, 2016) (Magnus-Stinson, C.J.); *George v. Wright, Lerch & Litow, LLP*, No. 15-C-811-JMS-DML, 2016 WL 6963990, at *3 (S.D. Ind. Nov. 29, 2016) (Magnus-Stinson, C.J.); *Long v. Fenton & McGarvey Law Firm P.S.C.*, No. 15-C-1924-LJM-DKL, 2016 WL 7179367, at *3 (S.D. Ind. Dec. 9, 2016) (McKinney, J.); *Dunham v. Robert Crane & Assocs., LLC*, No. 16-C-2100-SEB-MPB, 2017 WL 1423957, at *2–4 (S.D. Ind. Apr. 19, 2017) (Brookman, J.); *Pierre v. Midland Credit Mgmt., Inc.*, No. 16-C-2895, 2017 WL 1427070, at *3 (N.D. Ill. Apr. 21, 2017) (Leinenweber, J.); *Haddad v. Midland Funding, LLC*, ___ F. Supp. 3d ___, No. 16-C-3942, 2017 WL 1550187, at *3 (N.D. Ill. May 1, 2017) (Feinerman, J.); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 WL 2539782, at *2–3 (E.D. Wis. June 12, 2017) (Griesbach, C.J.); *Stockman v. Credit Prot. Ass'n, LP*, No. 16-C-8059, 2017 WL 2798403, at *2 (N.D. Ill. June 28, 2017) (Der-Yeghiayan, J.); *Gonzales v. Credit Prot. Ass'n, LP*, No. 16-C-8683, 2017 WL 2798404, at *2 (N.D. Ill. June 28, 2017) (Der-Yeghiayan, J.); *Hernandez v. Midland Credit Mgmt., Inc.*, No. 15-CV-11179, 2017 WL 2985764, at *2 (N.D. Ill. July 13, 2017) (Gottschall, J.); *Wheeler v. Midland Funding, LLC*, No. 15-C-11152, 2017 WL 3235683, at *5 (N.D. Ill. July 31, 2017) (Kendall, J.); *Swike v. Med-1 Solutions, LLC*, No. 17-C-1503-JMS-MPB, 2017 WL 4099307, at *2–4 (S.D. Ind. Sept. 15, 2017) (Magnus-Stinson, C.J.);

Perhaps recognizing the lack of support for their position from courts in this Circuit, Defendants cite to several out-of-circuit decisions. (Defs.' Reply Br. 9–11.) Several of those cases are distinguishable. In one of them, for example, the plaintiff never had a debt to pay off and instead brought a lawsuit based on someone else's AT&T account. *See Benali v. AFNI Inc.*, No. 15-C-3605-BRM-DEA, 2017 WL 39558, at *1 (D.N.J. Jan. 4, 2017). In *Jackson v. Abendroth & Russell, P.C.*, 207 F. Supp. 3d 945 (S.D. Iowa 2016), the court held that violations of FDCPA Section 1692g's disclosure requirements did not confer standing on their own, but "recognize[d] that violations of other FDCPA provisions may be sufficient on their own to constitute an Article III injury in fact." *Id.* at 961. *But see Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 994–95 (11th Cir. 2016) (holding that violations of Section 1692g do establish an injury in fact). Notably, *Jackson* itself cites two cases from the Northern District of Illinois which found injuries in fact stemming from violations of sections 1692e and 1692f—the basis for Aguirre's claims in this case—as prime examples of such provisions. *Id.* (citing *Quinn v. Specialized Loan Servicing*, No. 16-C-2021, 2016 WL 4264967, at *3–5 (N.D. Ill. Aug. 11, 2016); *Bernal v. NRA Group*, LLC, No. 16-C-1904, 2016 WL 4530321, at *4–5 (N.D. Ill. Aug. 30, 2016)).

Defendants have cited two cases in which the courts reached opposing conclusions over section 1692e itself. *See Provo v. Rady Children's Hosp.—San Diego*, No. 15-C-81-JM-BGS, 2016 WL 4625556, at *2 (S.D. Cal. Sept. 6, 2016) ("[W]hile Plaintiffs allege that CMRE violated the FDCPA and Rosenthal Act by sending the January 2, 2015, letter, nowhere in the [complaint] do they plead any harm or material risk of harm that they suffered as a consequence."); *May v. Consumer Adjustment Co., Inc.*, No. 4:14-C-166-HEA, 2017 WL 227964, at *4 (E.D. Mo. Jan. 19, 2017) (requiring an additional injury on top of a statutory violation to create FDCPA standing). Neither case is binding upon this court, nor are they in line

---

*Marquez v. Weinstein, Pinson & Riley, P.S.*, No. 14-C-739, 2017 WL 4164170, at *3 (N.D. Ill. Sept. 20, 2017) (Tharp, J.).

with Seventh Circuit precedent before and after *Spokeo*. *See Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) (stating that statutory violations of FDCPA sections 1692e and 1692g create standing); *supra n. 3.*

Finally, Defendants assert that portions of Aguirre's deposition and answers to interrogatories are inconsistent with her standing argument. Much of the material they cite, however, relates to claims she has not made. Defendants admit as much in their motion, stating that Aguirre's "only purported harm, *which she did not actually allege*, is that she was 'intimidated' by the sentence." (Defs.' Opening Br. 1) (emphasis added). They proceed to highlight Aguirre's deposition statement that she was just "a little concerned" after receiving the letter. (*Id.* at 5) (quoting Aguirre Dep., Ex. E to Defs.' Opening Br. [82-5], 19:10–23.) They then walk through her behavior after receiving the letter and argue that she did not act as a truly "intimidated person" would. (*Id.* at 14) (citing Aguirre Dep. 23:5–26:9.) Indeed, Defendants contend, Aguirre herself was not confused by the letter, citing to a hearing before Magistrate Judge Kim wherein Aguirre's counsel willingly ceded the point. (*Id.* at 4) (quoting Transcript of Proceedings, Ex. C to Defs.' Opening Br. [82-3], 10:3–20.) All of this evidence is relevant solely to Defendants' contention that, to establish standing under the FDCPA, plaintiff must allege a tangible harm beyond the violation itself. The court has already rejected that contention.

For this reason, the court is not moved by Defendants' continued focus on the "undisputed facts" that the debt itself was valid, that Plaintiff did not pay it, and that no interest or other fees were actually imposed. (Defs.' Opening Br. 12.) These facts are accurate, but not relevant to the injury Plaintiff alleged. (Pl.'s Resp. 12) ("Defendants caused Plaintiff an injury-in-fact when they violated her substantive rights to not be misled or deceived. . . . [T]hough Plaintiff has not alleged actual damages, actual fear or induced payments, the statements nevertheless posed a risk of misleading her and influencing her actions.") For the reasons stated above, and as other judges in this Circuit have concluded, Defendants' insistence that an additional showing is necessary is based on a misreading of *Spokeo*. Notably, FDCPA sections

1692e and 1692f both penalize the *attempt* to collect debts using "false or misleading representations," or "unfair or unconscionable means," respectively. It makes little sense to require tangible, financial harm to establish standing to sue under a statute that penalizes attempted wrongs. Attempts are by definition not successful.

Aguirre's complaint alleges that, by warning that "interest, late charges, and other charges" may continue to accrue, the collection letter effectively misrepresented the alleged debt. (Compl. ¶¶ 25–36.) She states that Defendants had no power or intent to add such charges, and the statement amounted to a threat intended to coerce her into repayment. (*Id.* at ¶¶ 37–43.) Defendants emphasize that Aguirre has no basis to allege "intimidation" or "confusion" (Defs.' Opening Br. 12–15; Defs.' Reply Br. 11–12), but Plaintiff does not rest her case on the notion that she was actually intimidated or confused, and the Defendants' efforts to frame this as a smoking-gun "admission" are ineffective. (Transcript of Proceedings 9:5–10:21.) Personal intimidation or fear is not a requirement for an FDCPA injury. *See Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012) ("[I]t is unimportant whether the individual that actually received a violative letter was misled or deceived."); *Rosales v. Weltman, Weinberg & Reis Co.*, No. 15-CV-6943, 2017 WL 1436957, at *4 (N.D. Ill. Apr. 24, 2017) (applying *Lox* post-*Spokeo*). None of the evidence presented by Defendants calls the propriety of these claims into question. Defendants criticize Aguirre for failing to present evidence in rebuttal and "prov[ing] by a preponderance of the evidence the facts necessary to jurisdiction." (Defs.' Reply Br. 2.) In a factual challenge to jurisdiction, however, the burden does not shift to the plaintiff upon the production of *any* evidence; the burden shifts only if defendant has produced evidence of "disputed *material* facts." *Apex*, 572 F.3d at 444 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Defendants have not called Plaintiff's standing into question on the grounds she asserted. To the extent these arguments are relevant to the overall dispute, they are relevant to the merits, not to standing.

**B.** **"Fairly Traceable"**

Defendants' second challenge to the traceability of Plaintiff's alleged injuries bears only brief discussion. Whether a plaintiff's injury in fact is "fairly traceable" to a defendant's challenged conduct hinges on the existence of a causal connection between the two. *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016). Defendants point to Aguirre's deposition as evidence that she was not intimidated by the sentence at issue in this case, but rather by the fact she had a debt at all. (Aguirre Dep. 25:22–26:9.) As the Defendants state: "neither [a] mistake of law nor the unpleasantness inherent in receiving a collections letter causes actionable harm." (Defs.' Opening Br. 15.) "In other words, § 1692e bars debt collectors from deceiving or misleading consumers; it does not protect consumers from fearing the actual consequences of their debts." *Sheriff v. Gillie*, 136 S. Ct. 1594, 1603 (2016).[4] As explained above, plaintiff's subjective beliefs are not relevant to the question of injury in fact from an allegedly threatening or misleading representation by a debt collector. Furthermore, the two views are not mutually exclusive: Aguirre may in fact have been surprised and intimidated by the reemergence of a debt she mistakenly believed extinguished, and the letter may have also contained an improper threat in violation of the FDCPA. The Defendants' effort to thread the needle by claiming the injury flows from the letter, but not the sentence within it, is unconvincing. In either case, the offending language is "fairly traceable" to their challenged conduct.

---

[4] Defendants also cite to a recent FDCPA case from the Northern District of Illinois, *Bass v. Blitt and Gaines, P.C.*, No. 16-C-6874, 2016 WL 6877729 (N.D. Ill. Nov. 22, 2016), by means of comparison. In *Bass*, the debtor had received a notice stating that "[i]f you fail to appear on the next court date the court may enter judgment against you for the amount claimed." *Id.* at *1. The court found that the debtor lacked standing as any injury flowed from the fact of his debt and the court hearing, not the notice. *Id.* at *2. This case is distinguishable as the court proceeding in question actually existed, and the sentence at issue was entirely accurate.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss under Rule 12(b)(1) for lack of standing [81] is denied. Plaintiff's motion for class certification [65] is stricken without prejudice to renewal. Status conference is set for October 19, 2017, at 9:00 a.m. Parties are encouraged to explore possible settlement.

ENTER:

Dated: September 27, 2017

REBECCA R. PALLMEYER
United States District Judge